## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF OKLAHOMA

**Case No.**  21-CV-304-RAW

**Ayinde Mohn, et. al (Beneficiary, heir, and acting trustee of the Reese family Restricted estate and life trust fund),**

      **Plaintiff,**

**vs.**

**United States (Guardian, Fiduciary, District Attorney, Secretary of Interior, Field Solicitor, Superintendent for the Five Civilized Tribes and agents in their official capacity, et. al.)**
      **Defendant,**

**PETITION PROSECUTING ACTIONS ACCORDING TO: Title 25 U.S.C. § 343 (Correction of Errors in Allotments and Patents); § 345 (Actions for Allotments); § 346 (Proceedings In Actions for Allotments): § 352c (Reimbursement of Allottees or Heirs for Taxes Paid on Lands Patented In Fee Before End of Trust): § 356 (Allowance of Undisputed Claims of Restricted Allottees of Five Civilized Tribes)**

1

## TABLE OF CONTENTS

1. FEDERAL STATUTES COMMANDING THE UNITED STATES TO BE THE INTERVENER IN PLAINTIFF MOHN'S SUIT.................................................3

2. SECRETARY OF INTERIOR'S 1901 ORDER TO THE DAWES COMMISSION: THE 1880 AUTHENTICATED CHEROKEE NATION FINAL ROLL IS CONCLUSIVE.................................................................................9

3. FEDERAL STATUTES CONFERRING JURISDICTION UPON THE DISTRICT COURT TO HEAR PLAINTIFF MOHN'S SUIT...........................................10

4. BACKGROUND.....................................................................53

     a. CAUSATION: THE 1901 MULTIPLE AGGRAVATED PERJURY CRIMES OF ADMINISTRATIVE OFFICER THOMAS B. NEEDLES.........................................................................54

5. EXHIBIT A.1. ......................................................................57

6. EXHIBIT A.2. .....................................................................71

7. EXHIBIT B.........................................................................77

8. EXHIBIT C.........................................................................86

## FEDERAL STATUTES COMMANDING THE UNITED STATES
## TO BE THE INTERVENER IN PLAINTIFF MOHN'S SUIT

1. **Act of Congress approved March 3, 1893 (27 Stat. 612, 631).** * * * The United States District Attorney shall represent them in all suits at law and in equity.* * * The general policy of the Federal Government, for a number of years has been to bring about the allotment in severalty of tribal property with certain restrictions upon alienation, and to confer citizenship, State and National, upon allottees.**The Dawes Commission, appointed by virtue of the act of March 3, 1893, had undertaken to negotiate with the Five Civilized Tribes for just that purpose.** * * *

2. **Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511).** * * * The allottees shall remain in peaceable and undisturbed possession thereof, subject to the provisions of this Act. That the United States shall put each allottee in possession of his allotment and remove all persons therefrom objectionable to the allottee.* * * **SEC. 21. * * * That in making rolls of citizenship of the several tribes, as required by law, <u>the Commission of the Five Civilized Tribes is authorized and directed to take the roll of Cherokee citizens of eighteen hundred and eighty (not including freedmen) as the only roll intended to be confirmed by this and proceedings Acts of Congress</u>, <u>and to enroll all persons now living whose names are found on said roll</u>, <u>and all descendants born since the date of said roll to persons whose names are found thereon</u>.** * * *

3. **Act of Congress approved March 2, 1901 (31 Stat. 950).** * * * Instruct the Attorney General to bring suit in the name of the United States to quiet title to Indian land.* * *

4. **Act of Congress approved March 3, 1901 (31 Stat. 1133, 1181).** * * * Authorize the Attorney General, upon the request of the Secretary of the Interior, to appear in suits involving Indian tribal lands.* * *

5. **Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727).** * * * That all contracts looking to the sale or incumbrance in any way of the land of an allottee, except the sale hereinbefore provided, shall be null and void.* * * **SEC. 27. <u>Such rolls shall in all other respects be made in strict compliance with the provisions of section twenty-one of the Act of Congress approved June twenty-eight, eighteen hundred and ninety-eight (Thirteenth Statutes, page four hundred and ninety-five), and the Act of Congress approved May thirty-first, nineteenth hundred (Thirty-first Statutes, page two hundred and twenty-one).</u>** * * *

6. **Act of Congress approved April 28, 1904 (33 Stat. 452, 506).** * * * The Attorney General is sometimes authorized to employ a special attorney, upon the recommendation of the Secretary.* * *

7. **Act of April 26, 1906 (34 Stat. 137, chap. 1876) * * * SEC. 3. The roll of Cherokee freedmen shall include <u>only such persons of African descent</u>,** either free colored or the slaves of Cherokee citizens and their descendants, who were actual personal bona fide residents of the Cherokee Nation August eleventh, eighteen hundred and sixty-six, or who actually returned and established such residence in the Cherokee Nation on or before February eleventh, eighteen hundred and sixty-seven... * * * **SEC. 4.** That no name shall be transferred from the approved freedmen, or any other approved rolls of the Choctaw, Chickasaw, **Cherokee,** Creek, or Seminole tribes, respectively, to the roll of citizens by blood, **unless the records in charge of the Commissioner to the Five Civilized Tribes show that application for enrollment as a citizen by blood was made within the time prescribed by law by or for the party seeking the transfer, and said records shall be conclusive evidence as to the fact of such application, unless it be shown by documentary evidence that the Commission to the Five Civilized Tribes actually received such application within the time prescribed by law.* * ***

8. **Act of Congress approved May 27, 1908 (35 Stat. 312).** * * * The lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: **All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one**, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe.* * * **SEC. 6. And said representatives of the Secretary of Interior are further authorized, and it is made their duty, to counsel and advise all allottees, adult or minor, having restricted lands of all of their legal rights with reference to their restricted lands, without charge, and to advise them in preparation of all leases authorized by law to be made, and at the request of any allottee having restricted land he shall, without charge, except the necessary court and recording fees and expenses, if any, in the name of the allottee, take such steps as may be necessary, including the bringing of any suit or suits and the prosecution and appeal thereof, to cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other encumbrance of any kind of character, made or attempted to be made or executed in violation of this Act or any other Act of Congress, and to take all steps necessary to assist said allottees in acquiring and retaining possession of their restricted lands.* * ***

9. **Act of Congress approved March 3, 1915 (38 Stat. 822 , 866)**. * * * Authorize the Secretary to instruct the Attorney General to bring suit in the name of the United States to quiet and settle title to distributed tribal or allotted lands.* * *

10. **43 U.S.C. 868 (1925).** * * * The Attorney General is sometimes authorized to employ a special attorney, upon the recommendation of the Secretary.* * *

11. **Act of Congress approved April 12, 1926 (44 Stat. 239).** * * * The United States may be compelled to appear and defend its interests in any suit pending in the Federal or State courts of Oklahoma in which restricted members of the Five Civilized Tribes are parties.* * * **By § 3 Congress provided for the service upon the Superintendent for the Five Civilized Tribes of a prescribed written notice of the pendency of any suit to which a restricted member of the Tribes in Oklahoma or the restricted heirs or grantees are parties and which involves claims to * * * lands allotted to a citizen of the Five Civilized Tribes or the proceeds, issues, rents, and profits derived from the same.* * * By that Act the United States is given an opportunity to appear in the cause and is bound by the judgment which is entered.* * ***

12. **Act of Congress approved May 10, 1928 (Chap. 517 Stat. 495).** * * * SEC. 2. * * *Provided further, **That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable**, unless restrictions against alienation are removed therefrom by the Secretary of the Interior for the use and support of such issue, during their life or lives, until April 26, 1931.* * *

13. **Act of Congress approved January 27, 1933 (Chap. 23 Stat. 777).** * * *_Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled_**, That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956 * * * SEC. 6. ...It shall be the duty of the Attorney General to institute appropriate proceedings in the Federal courts for the cancellation and annulment of said trust by court decree, and upon decree of annulment and cancellation, which shall be at the cost of the trustee,...and the Federal courts are hereby given exclusive jurisdiction of all actions involving an accounting under any trust created under the provisions of this Act, and all actions to cancel, amnul, or set aside any trust entered into pursuant to this Act.* * * SEC. 8. That it shall be the duty of the attorneys provided for under the Act of May 27, 1908 (35 Stat. L. 312), to appear and represent any restricted member of the Five Civilized Tribes before the county courts of any county in the State of Oklahoma**, or before any appellate court thereof, in any matter in which said restricted Indians may have an interest, and no conveyance of any interest in land of any full-blood Indian heir shall be valid unless approved in open court after notice in accordance with the rules of procedure in probate matters adopted by the Supreme Court of Oklahoma in June of 1914.... Approved, **January 27, 1933.* * ***

14. **August 4, 1947 (61 Stat. 731) amended by the Act of Congress approved Dec. 31, 2018 (61 Stat. 731, chapter 458).** * * * To amend the Act of August 4, 1947 (commonly known as the Stigler Act), with respect to restrictions applicable to Indians of the Five Civilized Tribes of Oklahoma, and for other purposes. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* SEC. 2. IN GENERAL. The first section of the Act of August 4, 1947 (61 Stat. 731, chapter 458), is amended— (1) in the matter before subsection (a), by striking "That all restrictions" and all that follows through subsection (a) and inserting the following: "SEC. 1. (a) **All restrictions against alienation, conveyance, lease, mortgage, creation of liens, or other encumbrances upon all lands, including oil and gas or other mineral interests, in Oklahoma belonging to a lineal descendant by blood of an original enrollee whose name appears on the** Final Indian Rolls **of the Five Civilized Tribes in Indian Territory, whether acquired by allotment, inheritance, devise, gift, purchase, exchange, partition, partition sale, or by purchase with restricted funds, of whatever degree of Indian blood, and whether enrolled or unenrolled, shall be and are hereby, extended until an Act of Congress determines otherwise**. "(b) The extension of restrictions described in subsection (a) shall include without limitation, **those interests in the estate of a decedent Indian who died before the date of enactment of the Stigler Act Amendments of 2018**— "(1) if such interests were acquired by an heir or devisee of one-half or more degree of Indian blood, as computed from the nearest enrolled lineal ancestors of Indian blood enrolled on the Final Rolls described in subsection (a), by final order issued by an Oklahoma district court or a United States district court determining the decedent's heirs or devisees or otherwise determining the ownership of said interests before said date; or "(2) **if such interests were, immediately prior to the decedent's death, subject to restrictions and had not, as of the date of enactment of the Stigler Act Amendments of 2018, been— "(A) the subject of a final order issued by an Oklahoma district court or a United States district court determining the decedent's heirs or devisees or otherwise determining the ownership of said interests;** "(B) conveyed by the decedent's undetermined heirs or devisees by deed approved by an Oklahoma district court; or "(C) conveyed by the decedent's undetermined heirs or devisees of less than one-half degree of Indian blood with or without Oklahoma district court approval. "SEC. 2. (a) Except as provided in subsection (f), subsection (g), subsection (h), and subsection (i), **no conveyance, including an oil and gas or mineral lease, of any interest in the restricted lands described in this section shall be valid unless approved in open court by the district court of the county in Oklahoma in which the land is situated**;"; (2) in subsection (b)— (A) by striking "county judge" and inserting "**district judge**"; and (B) by striking "Proceedings for approval of conveyances by restricted heirs or devisees" and inserting "**Proceedings for approval of conveyances**"; (3) in subsection (c), by striking "best interest of the Indian" and inserting "**best interest of the grantor**"; and (4) by adding before the period at the end the following: "; (h) nothing contained in this section shall limit or affect the right of an Indian owner of restricted lands described in this Act to seek and obtain

Secretarial removal of restrictions on all or any portion of said restricted lands in accordance with any applicable Federal law; (i) nothing contained in this section shall invalidate the alienation, conveyance, lease, including oil and gas or other mineral leases, mortgage, creation of liens, or other encumbrance of any lands, if such action was effective before the date of enactment of the Stigler Act Amendments of 2018 and valid under the law then in effect; and (j) **in determining the quantum of Indian blood of any Indian heir or devisee, the <u>Final Indian Rolls</u> of the Five Civilized Tribes in Indian Territory as to such heir or devisee, if enrolled, shall be conclusive of his or her quantum of Indian blood**. If unenrolled, his or her degree of Indian blood shall be computed from the nearest enrolled lineal ancestors of Indian blood enrolled on the <u>Final Indian Rolls</u> of the Five Civilized Tribes in Indian Territory." SEC. 3. (a) **The State courts of Oklahoma shall have exclusive jurisdiction** of all **guardianship matters affecting Indians of the Five Civilized Tribes, of all proceedings to administer estates or to probate the wills of deceased Indians of Five Civilized Tribes, and of all actions to determine heirs** arising under section 1 of the Act of June 14, 1918 (40 Stat. 606) **SEC. 4. That the attorneys provided for under the Act of May 27, 1908 (35 Stat. 312), are authorized to appear and represent any restricted member of the Five Civilized Tribes in Oklahoma before any of the courts of the State of Oklahoma in any matter in which the said restricted Indian may have an interest. SEC. 5. That all funds and securities now held by, or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until otherwise provided by Congress, subject to expenditure in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe. SEC. 6. (a) Except as hereinafter provided, the tax-exempt lands of any Indian of the Five Civilized Tribes in Oklahoma shall not exceed one hundred and sixty acres, whether the said lands be acquired by allotment, descent, devise, gift, exchange, partition, or by purchase with restricted funds.\* \* \***

15. **The Act of Congress approved August 11, 1955 (69 Stat. 666). \* \* \*** *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That subject to the provisions of section 2 of this Act, **the period of restrictions against alienation, lease, mortgage, or other encumbrance of lands belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half degree or more Indian blood, which period was extended to April 26, 1956, by the Act of May 10, 1928 (45 Stat. 495), is hereby extended for the lives of the Indians who own such lands subject to such restrictions on the date of this Act. \* \* \***

16. **25 U.S.C. § 16 (2012). PART 16—ESTATES OF INDIANS OF THE FIVE CIVILIZED TRIBES.§ 16.3 Legal representation in State courts. <u>The statutory duties of the Secretary to furnish legal advice to any Indian of the Five Civilized Tribes, and to represent such Indian in State courts, in matters affecting a restricted interest owned by such Indian, shall be performed by attorneys on the staff of the Solicitor</u>, under the supervision of the Field Solicitor. Such advice and representation shall be undertaken to the extent that the Field Solicitor in his discretion shall consider necessary to discharge said duties, with due regard to the complexity of the legal action contemplated, the availability of staff attorneys for such purposes, the value and extent of the restricted interests involved, possible conflicts between Indians claiming to be owners of such interests, the preference of such owners concerning legal representation, the financial resources available to such owners, the extent to which such owners require similar legal services in connection with their unrestricted properties, and any other factor appropriate for consideration.**

    Authority. 5 U.S.C. 301 **(Interprets or applies Act of Apr. 26, 1906, ch. 1876, 34 Stat. 137**, see 25 U.S.C. 355nt (1970); **Act of May 27, 1908, ch. 199, 35 Stat. 312**, see 25 U.S.C. 355nt (1970); Act of June 14, 1918, ch. 101, 40 Stat. 606, 25 U.S.C. 355, 375 (1970); Act of Apr. 12, 1926, ch. 115, 44 Stat. 239, see 25 U.S.C. 355nt (1970); Act of June 26, 1936, ch. 831, 49 Stat. 1967, 25 U.S.C. 501-509 (1970); **Act of Aug. 4, 1947, ch. 458, 61 Stat. 731**, 25 U.S.C. 502 (1970) and see 25 U.S.C. 355nt (1970); Act of Aug. 12, 1953, ch. 409, 67 Stat. 558, 25 U.S.C. 375c (1970) and see 25 U.S.C. 355nt (1970); Act of Aug. 11, 1955, ch. 786, 69 Stat. 666, see 25 U.S.C. 355nt (1970); Act of Aug. 29, 1967, Pub. L. 90-76, 81 Stat. 177, 25 U.S.C. 786-788 (1970); and Act of May 7, 1970, Pub. L. 91-240, 84 Stat. 203, 25 U.S.C. 375d (1970)). Source-37 FR 7082, Apr. 8, 1972, unless otherwise noted. Federal Register References-37 FR 7082. United States Code References-5 U.S.C. 301, 25 U.S.C. 355, 355nt, 375, 375c, 375d, 501-509, 502 and 786-788. Statutes at Large References- 34 Stat. 137, 35 Stat. 312, 40 Stat. 606, 44 Stat. 239, 49 Stat. 1967, 61 Stat. 731, 67 Stat. 558, 69 Stat. 666, 81 Stat. 177, 84 Stat. 203, Public and Private Laws, Public Law 90-76, Public Law 91-240.

17. **25 U.S.C. § 81 (2011). * * * (b) Approval.** No agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 or more years shall be valid **unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary. (d) Unapproved agreements. The Secretary (or a designee of the Secretary) shall refuse to approve an agreement or contract that is covered under subsection (b) of this section if the Secretary (or a designee of the Secretary) determines that the agreement or contract—(1) violates Federal law;* * ***

18. **25 U.S.C. § 175 (2012), §178 (1997). * * * The United States District Attorney shall represent them in all suits at law and in equity.* * ***

19. **25 U.S.C. § 355 (2012). Laws applicable to lands of full-blooded members of Five Civilized Tribes. * * * The lands of full-blooded members of any of the Five Civilized Tribes are made subject to the laws of the State of Oklahoma, providing for the partition of real estate. Any land allotted in such proceedings to a full-blood Indian, or conveyed to him upon his election to take the same at the appraisement, shall remain subject to all restrictions upon alienation and taxation obtaining prior to such partition. In case of a sale under any decree, or partition, the conveyance thereunder shall operate to relieve the land described of all restrictions of every character. (June 14, 1918, ch. 101, §2, 40 Stat. 606 .) * * ***

20. **25 U.S.C. § 372 (2011). * * * The Secretary of the Interior shall ascertain the legal heirs of such decedent.* * ***

21. **25 U.S. C. § 375 (2011). * * * Determination of heirship of deceased members of Five Civilized Tribes. A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the State of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said State for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question**... (June 14, 1918, ch. 101, §1, 40 Stat. 606.) * * *

**SECRETARY OF INTERIOR'S 1901 ORDER TO THE DAWES COMMISSION: THE 1880 AUTHENTICATED CHEROKEE NATION FINAL ROLL IS CONCLUSIVE**

**ACTING CHAIRMAN OF THE COMMISSION TO THE FIVE CIVILIZED TRIBES.**

Sir : The act of Congress approved June 28 , 1898 (30 Stat. L., 195), in prescribing the duties of your commission in the matter of making rolls of citizenship of the several tribes, among other things said :
...A roll was made under this decree, known as the " Clifton roll," which was approved by this Department in 1897. It has been claimed that said roll contains many names not properly belonging there, but whether this fact influenced Congress to disregard that roll and direct that a new one be made in strict compliance with said decree is immaterial, for the fact remains that the decree alone is to be taken as a guide for making the roll which your commission is to prepare.
The roll of 1880, made by the Cherokee Nation, is to be accepted by you as conclusive of the right of all persons whose names are found thereon and of their descendants to be enrolled by you. Your only duty in relation thereto is to ascertain who of the persons named therein are alive and who of their descendants are alive and place their names on your roll, omitting, however, all who have forfeited or abjured their citizenship.

9

## FEDERAL STATUTES CONFERRING JURISDICTION UPON
## THE DISTRICT COURT TO HEAR PLAINTIFF MOHN'S SUIT

1. **25 U.S.C. §343. Correction of errors in allotments and patents. * * * In all cases where it shall appear that a double allotment of land has been wrongfully or erroneously made by the Secretary of the Interior to any Indian by an assumed name or otherwise, or where a mistake has been made in the description of the land inserted in any patent, said Secretary is authorized and directed, during the time that the United States may hold the title to the land in trust for any such Indian, and for which a conditional patent may have been issued, <u>to rectify and correct such mistakes and cancel any patent</u> which may have been thus erroneously and wrongfully issued whenever in his opinion the same ought to be canceled for error in the issue thereof, and if possession of the original patent cannot be obtained, such cancellation shall be effective if made upon the records of the Bureau of Land Management; and no proclamation shall be necessary to open to settlement the lands to which such an erroneous allotment patent has been canceled, provided such lands would otherwise be subject to entry:** And provided, That such lands shall not be open to settlement for sixty days after such cancellation: And further provided, That no conditional patent that has been or that may be executed in favor of any Indian allottee, excepting in cases hereinbefore authorized, and excepting in cases where the conditional patent is relinquished by the patentee or his heirs to take another allotment, shall be subject to cancellation without authority of Congress.**(Jan. 26, 1895, ch. 50, 28 Stat. 641; Apr. 23, 1904, ch. 1489, 33 Stat. 297; 1946 Reorg. Plan No. 3, §403, eff. July 16, 1946, 11 F.R. 7876, 60 Stat. 1100.) * * ***

2. **25 U.S.C. § 345. Actions for allotments. * * * All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands now held by either of the Five Civilized Tribes, nor to any of**

the lands within the Quapaw Indian Agency: Provided, That the right of appeal shall be allowed to either party as in other cases. (Aug. 15, 1894, ch. 290, §1, 28 Stat. 305; Feb. 6,1901, ch. 217, §1, 31 Stat. 760; Mar. 3, 1911, ch. 231, §291, 36 Stat. 1167.) * * *

3. **25 U.S.C. § 346. Proceedings in actions for allotments.** * * * The plaintiff shall cause a copy of his petition filed under section 345 of this title, to be served upon the United States attorney in the district wherein suit is brought, and shall mail a copy of same, by registered letter, to the Attorney General of the United States, and shall thereupon cause to be filed with the clerk of the court wherein suit is instituted an affidavit of such service and the mailing of such letter. It shall be the duty of the United States attorney upon whom service of petition is made as aforesaid to appear and defend the interests of the Government in the suit, and within sixty days after the service of petition upon him, unless the time should be extended by order of the court made in the case to file a plea, answer, or demurrer on the part of the Government, and to file a notice of any counterclaim, set-off, claim for damages, or other demand or defense whatsoever of the Government in the premises: Provided, That should the United States attorney neglect or refuse to file the plea, answer, demurrer, or defense, as required, the plaintiff may proceed with the case under such rules as the court may adopt in the premises; but the plaintiff shall not have judgment or decree for his claim, or any part thereof, unless he shall establish the same by proof satisfactory to the court. (Feb. 6, 1901, ch. 217, §2, 31 Stat. 760; June 25, 1948, ch. 646, §1, 62 Stat. 909.) CHANGE OF NAME "United States attorney" substituted in text for "district attorney of the United States" on authority of act June 25, 1948. See section 541 of Title 28, Judiciary and Judicial Procedure. * * *

4. **25 U.S.C. § 352c. Reimbursement of allottees or heirs for taxes paid on lands patented in fee before end of trust.** * * * The Secretary of the Interior is hereby authorized, under such rules and regulations as he may prescribe, to reimburse Indian allottees, or Indian heirs or Indian devisees of allottees, for all taxes paid, including penalties and interest, on so much of their allotted lands as have been patented in fee prior to the expiration of the period of trust without application by or consent of the patentee: Provided, That if the Indian allottee, or his or her Indian heirs or Indian devisees, have by their own act accepted such patent, no reimbursement shall be made for taxes paid, including penalties and interest, subsequent to acceptance of the patent: Provided further, That the fact of such acceptance shall be determined by the Secretary of the Interior. In any case in which a claim against a State, county, or political subdivision thereof, for taxes collected upon such lands during the trust period has been reduced to judgment and such judgment remains unsatisfied in whole or in part, the

Secretary of the Interior is authorized, upon reimbursement by him to the Indian of the amount of taxes including penalties and interest paid thereon, and upon payment by the judgment debtor of the costs of the suit, to cause such judgment to be released: Provided further, That in any case, upon submission of adequate proof, the claims for taxes paid by or on behalf of the patentee or his Indian heirs or Indian devisees have been satisfied, in whole or in part, by the State, county, or political subdivision thereof, the Secretary of the Interior is authorized to reimburse the State, county, or political subdivision for such amounts as may have been paid by them. (June 11, 1940, ch. 315, §1, 54 Stat. 298; Feb. 10, 1942, ch. 56, §1, 56 Stat. 87.) AMENDMENTS 1942—Act Feb. 10, 1942, inserted two provisos to first par., substituted in first par. "Indian allottees, or Indian heirs or Indian devisees of allottees" and "have been patented" for "Indian allottees and Indian heirs of allottees" and "having been patented", struck out from first par. ", has been or may be restored to trust status through cancellation of the fee patent by the Secretary of the Interior" after "consent of the patentee", designated as second par, the two provisos of original par., inserted in second par. "in whole or in part" after "remains unsatisfied" and substituted in second par. "during the trust period" and "by the judgment debtor" for "while the patent in fee was outstanding" and "by the State, county, or political subdivision thereof" and in proviso ", upon submission of adequate proof, the claims for taxes paid by or on behalf of the patentee or his Indian heirs or Indian devisees have been satisfied, in whole or in part, by the State, county, or political subdivision thereof, the Secretary of the Interior is authorized to reimburse the State, county, or political subdivision for such amounts as may have been paid by them" for "in which a claim has been reduced to judgment and such judgment has been satisfied, the Secretary of the Interior is authorized, upon proof of satisfaction thereof, to reimburse the State, county, or political subdivision thereof, for the actual amount of the judgment, exclusive of the costs of litigation". APPROPRIATIONS Section 2 of act Feb. 10, 1942, authorized appropriations to remain available until expended. * * *

5. 25 U.S.C. § 356. Allowance of undisputed claims of restricted allottees of Five Civilized Tribes. * * * No undisputed claims to be paid from individual moneys of restricted allottees, or their heirs, or uncontested agricultural and mineral leases (excluding oil and gas leases) made by individual restricted Indian allottees, or their heirs, shall be forwarded to the Secretary of the Interior for approval, but all such undisputed claims or uncontested leases (except oil and gas leases) shall be paid, approved, rejected, or disapproved by the Superintendent for the Five Civilized Tribes of Oklahoma: Provided, however, That any party aggrieved by any decision or order of the Superintendent for the Five Civilized Tribes of Oklahoma may appeal from the same to the Secretary of the Interior within thirty days from the date of said decision or order. (Feb. 14, 1920, ch. 75, §18, 41 Stat.

426.) CODIFICATION The clause "heretofore required to be approved under existing law by the Secretary of the Interior" after the words "but all such undisputed claims or uncontested leases (except oil and gas leases)" omitted from text as superfluous. TRANSFER OF FUNCTIONS For transfer of functions of other officers, employees, and agencies of Department of the Interior, with certain exceptions, to Secretary of the Interior, with power to delegate, see Reorg. Plan No. 3 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3174, 64 Stat. 1262, set out in the Appendix to Title 5, Government Organization and Employees. * * *

## LEGAL PRECEDENT COMMANDING THE UNITED STATES
## <u>TO BE THE INTERVENER IN PLAINTIFF MOHN'S SUIT</u>

1.   *Stanley v. Schwalby*  (162 U.S. 255 (1896)).

2.   *Cherokee Nation v. Hitchcock*, 187 U.S. 294 (1902). .

3.   *Heckman v. United States*, 224 U. S. 413 (1912).

4.   *Brewer Elliott Oil & Gas Co. v. United States*, 260 U. S. 77 (1922)

5.   *New York v. New Jersey* (256 U.S. 296 (1921)).

6.   *Oklahoma v. Texas* (258 U.S. 574 (1922))

7.   *United States v. Minnesota*, 270 U. S. 181, 194 (1926).

8.   *Creek Nation v. United States*, 302 U. S. 620 (1938).

9.   *United States v . Hellard, 322 U. S. 363* (1944).

10.  *Arenas v. United States, 322 U.S. 419* (1944).

11.  *Arenas v. Preston*, 181 F. 2d 62 (1950).

## OPENING STATEMENT

**The Parable of the Persistent Widow (Luke 18:1-8 New King James Version)**

18 Then He spoke a parable to them, that men always ought to pray and not lose heart, 2 saying: "There was in a certain city a judge who did not fear God nor regard man. 3 Now there was a widow in that city; and she came to him, saying, 'Get justice for me from my adversary.' 4 And he would not for a while; but afterward he said within himself, 'Though I do not fear God nor regard man, 5 yet because this widow troubles me I will avenge her, lest by her continual coming she weary me.' "

6 Then the Lord said, "Hear what the unjust judge said. 7 And shall God not avenge His own elect who cry out day and night to Him, though He bears long with them? 8 I tell you that He will avenge them speedily. Nevertheless, when the Son of Man comes, will He really find faith on the earth?"

**\* \* \*Res judicata is no bar, of course, where Congress has provided new statutory grounds for recovery.**[1] Therefore, under Title 25, Sections 343, 345,[2] 346, 352c, 353, and 356, comes now Plaintiff Mohn in a petition to claim his rightful entitlement to his full-blood "Native Cherokee" citizenship, life trust, and "Restricted" estate, derived from 488 acres of "Restricted" lands in the Cherokee Nation territory of the State of Oklahoma. Moreover, comes now Plaintiff Mohn to claim his rightful entitlement to his full-blood "Native Cherokee" citizenship and Federal Indian civil rights as a direct lineal descendant of Jesse Reese, Betsy Reese, and James Reese, all

---

[1] *Chickasaw Nation v. United States*, 132 F. Supp . 199 (1955).

[2] The act of August 15, 1894, as amended, gave Indians a legal action to enforce any right they might have to an allotment. See act of December 21, 1911, 37 Stat. 46, amendatory of act of August 15, 1894, 28 Stat. 286, 305, as amended by act of February 6, 1901, 31 Stat. 760, and act of March 3, 1911, 36 Stat. 1094, 25 U. S. C. 345, conferring jurisdiction upon the district courts of the United States of — all actions, suits, or proceedings involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty. and authorizing and directing that the United States be made a party to such suit. This act followed the decisions of the Supreme Court in the cases of *Hy- yu - toc -mil -kin v. Smith*, 194 U. S. 401 ( 1901 ) , and *McKay v. Kalyton*, 204 U. S. 458 (1907), in which the Supreme Court had held that the United States was not a necessary party to such suit for allotment. See also 28 U. S. C. 1353 granting original jurisdiction to the Federal district courts to hear these allotment suits.

identified as full-blood "Native Cherokees" on page 165 of the federally recognized, **1880 Authenticated Cherokee Nation Final Roll. * * * [I]n determining the quantum of Indian blood of any Indian heir or devisee, the <u>Final Indian Rolls</u> of the Five Civilized Tribes in Indian Territory as to such heir or devisee, if enrolled, shall be conclusive of his or her quantum of Indian blood. * * * See Act of August 4, 1947 (61 Stat. 731) amended by the Act of Congress approved Dec. 31, 2018 (61 Stat. 731, chapter 458), commonly known as the Stigler Act.**

Notwithstanding 25 U.S.C. §343 (Correction of errors in allotments and patents), from 1903-1906, administrative officer Thomas B. Needles and his relative, clerk Homer Needles, issued James Reese, the "Administrator" of Betsy Reese's estate and the "Power of attorney" of Jesse Reese and Anderson Reese's estate, several erroneous **"Unrestricted"** allotment certificates (patents, deeds, etc.). Consequently, instead of the Secretary of Interior approving and issuing James Reese his rightfully entitled **"Restricted"** allotment certificates, he unknowingly approved **"Unrestricted"** allotment certificates, thereby causing the full-blood "Native Cherokee" citizenship, life trust and estate of James Reese and his direct lineal descendants (Plaintiff Mohn) to fall into ruin.

**In other words, since 1901, the arbitrary actions of merely administrative officers have undermined the Secretary of Interior's ministerial authority, this Court's judicial oversight, and Congress's legislative authority**. In his 1901 decree to the Chairman of the Dawes Commission, the Secretary of Interior forbade his subordinates to dispute the citizenship, whether "by blood" or "adopted Cherokee Freedmen," of anyone whose name appeared on the **1880 Authenticated Cherokee Nation Final Roll**.

\* \* \* <u>Moreover, where the Government has issued an erroneous patent for the allotment selections, the owner of such selection will be protected in his right against the adverse interests possessing the patent</u> (*Hy-Yu-Tse-Mil-kin v. Smith* (194 U.S. 401); *Smith v. Bonifer* (132 Fed. 889(C. C. Ore. 1904), 166 Fed. 846 (C. C. A. 9th, 1909))**, <u>and against the Government itself</u>**. *Conway v. United States* (149 Fed. 261) (C. C. Neb. 1907). <u>In these cases the courts lay down the principle that where an Indian has done all that is necessary and that he can do to become entitled to land and fails to attain the right through the neglect or misconduct of public officers, the courts will protect him in such right. Again, where the claimant does all required of him he acquires a right against the Government for the perfection of his title, and the right is to be determined as of the date it should have been perfected</u>. *Payne v. New Mexico* (255 U.S.367); *Raymond Bear Hill, supra*. <u>Further, where the right to the allotment has failed to become vested through the neglect of public officers to attach approval to the selection, one court has indicated that the right to the allotment would be considered as already vested so as to be beyond the reach of a later act of Congress</u>. ***Lemieux v. United States* (15 Fed. (2d) 518. 521 (C. C. A. 8th, 1926)).** \* \* \*[3]

---

[3] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey. Originally published: U.S. Govt. Printing Office. 1958. "United States Department of

**\* \* \*Again, where the claimant does all required of him he acquires a right against the Government for the perfection of his title, and the right is to be determined as of the date it should have been perfected. \* \* \*** Full-blood "Native Cherokee" James Reese, who died intestate in 1963, he did everything he could to become entitled to 488 acres of **"Restricted"** lands in the Cherokee Nation territory of Oklahoma, whether probating Betsy Reese's allotments or becoming power of attorney for both Jesse Reese and Anderson Reese's allotments. Despite his legal actions to protect his "Restricted" estate, James Reese "**failed to attain the right through the neglect or misconduct of public officers."** Therefore, the courts are required by Federal law **"to protect him in such right,"** to acquire his estate against the Government for the perfection of his allotment certificates, **"as of the date it should have been perfected" as "Restricted,"** beginning with the **Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511)**, next, the **Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727),** next, the **Act of April 26, 1906, ch. 1876, 34 Stat. 137,** and finally, the **Act of Congress approved May 27, 1908 (35 Stat. 312).**

> **One is the fact that the failure of approval before the act in question was passed is due to the negligence of the Government officers charged with the making of allotments. Equity on these facts would step in and protect the inchoate right as a vested right. The second**

Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor." pg. 69.

**is the fact that the approval required is not of a discretionary nature.**
**Since the Secretary was under duty to correct the clerical errors, the**
**right to the patent is nearly as strong where the allotment was not**
**approved for such error as where was approved but not patented for**
**the same type of error.[4]**

Therefore, in the best interest of both Plaintiff Mohn and the public, according to the Act of Congress approved August 4, 1947 (61 Stat. 731, chapter 458), amended by the Act of Congress approved Dec. 31, 2018 (132 Stat. 5331), supplemented by the Federal statutes on the previous pages, comes now Plaintiff Mohn to petition the attorneys provided for under the Act of May 27, 1908 (35 Stat. 312) in the name of the allottee, to take such steps as may be necessary, including the bringing of any suit or suits and the prosecution and appeal thereof, to: 1) cancel and annul any deed, conveyance, mortgage, lease, contract to sell, power of attorney, or any other encumbrance of any kind of character, made or attempted to be made or executed in violation of this Act or any other Act of Congress, and to take all steps necessary to assist said full-blood "Native Cherokee" allottee heir Plaintiff Mohn in acquiring and retaining possession of his restricted lands; 2) appear and represent Plaintiff Mohn before this Court in any matter "in which the said restricted Indian may have an interest"

---

[4] *Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974 Volume I,* By United States. Department of the Interior. Office of the Solicitor. 1979.

to recover the unlawful conveyances of his Reese family Restricted life trust and land

estate, located in the Cherokee Nation territory of the State of Oklahoma.

> **Act of Congress approved May 27, 1908 (35 Stat. 312). * * * SEC. 6.
> And said representatives of the Secretary of Interior are further
> authorized, and it is made their duty, to counsel and advise all
> allottees, adult or minor, having restricted lands of all of their legal
> rights with reference to their restricted lands, without charge, and to
> advise them in preparation of all leases authorized by law to be
> made, and at the request of any allottee having restricted land he
> shall, without charge, except the necessary court and recording fees
> and expenses, if any, in the name of the allottee, take such steps as
> may be necessary, including the bringing of any suit or suits and the
> prosecution and appeal thereof, to cancel and annul any deed,
> conveyance, mortgage, lease, contract to sell, power of attorney, or
> any other encumbrance of any kind of character, made or attempted
> to be made or executed in violation of this Act or any other Act of
> Congress, and to take all steps necessary to assist said allottees in
> acquiring and retaining possession of their restricted lands.* * ***

The rule of law declares the provisions of the Curtis Act of Congress approved

June 28, 1898 (30 Stat. 498, 502-511) and the Act of Congress approved July 1, 1902

(chs. 1375, 1376, 32 Stat. 716, 720--727) requiring a roll and Restricted allotments to be

made in **"strict compliance with the *1880 Authenticated Cherokee Nation Final***

*Roll,*" necessarily confirmed the roll, and that the Dawes Commission, in disregarding it

when degrading Plaintiff Mohn and his direct lineal full blood "Native Cherokee"

ancestors of the Reese family estate trust to Cherokee Freedmen, disobeyed the

commands of these statutes.

> <u>Where the law provides for the enrollment of "Indians of the blood"</u>
>
> <u>of certain tribes or bands, the Secretary is not required to make a</u>
>
> <u>special determination of how the ancestors of an applicant for</u>
>
> <u>enrollment became members of the particular tribe or band. Such a</u>
>
> <u>roll, it is said, should include any bona fide member whose</u>
>
> <u>ancestors would have been accepted by the tribe as members</u>.
>
> **Where the legislative history of the law shows that to be the intent of**
>
> **Congress.**[5]

Therefore, the following statutory commands of Congress are undisputed

evidence of the constitutional obligations of the United States to perform their duty of

"guardianship"[6] over its "wards," or "full blood" Native Cherokee direct descendants like

---

[5] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the*

*Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey.

Originally published: U.S. Govt. Printing Office. 1958. "United States Department of

Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett,

Solicitor." Pg. 416.

[6] * * * **By virtue of its own interest and the interest of the tribe*** * *, see *Brewer Elliott*

*Oil & Gas Co. v. United States*, 260 U. S. 77 (1922);* * * **by virtue of its interest in**

Plaintiff Mohn, and its constitutional obligation to defend his Federal Indian civil rights. According to the provisions of the **1880 Authenticated Cherokee Nation Final Roll**, supplemented by the Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511), and the Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727), as the guardian of Plaintiff Mohn's "full blood" citizenship birth rights and the fiduciary of his estate and life trust, derived from 488 acres of lands in the Cherokee Nation territory of the State of Oklahoma, the United States is "compelled to appear and defend its interests in any suit pending in the Federal courts in which restricted members of the Five Civilized Tribes are parties." *Oklahoma v. Texas* (258 U.S. 574 (1922)). Moreover, these acts compel the District Attorney of the United States * * * to represent them in all suits at law and in equity. * * * 25 U.S.C. 175, 178.

According to a network of Federal laws protecting his Federal Indian Civil rights, Plaintiff Mohn has proven beyond a doubt that he has been deprived of those rights that **there is no genuine dispute as to any material fact.** Therefore, Plaintiff Mohn is entitled to judgment as a matter of law. According to the Supreme Court, * * * **if the complainant is not a trustee, he has at least acted the part of a trustee in relation to the common interest. * * * Id. at 532.**[7]

---

**maintaining restrictions and Indians in possession,*** * * *Privett v. United States*, 256 U. S. 201 (1921). Also see *Heckman v. United States*, 224 U, S. 413 (1912); *United States v. Title Insurance Co.*, 265 U, S. 472 (1924); *Osage County Motor Co. v. United States*, 33 F. 2d 21 (1929), cert. den. 280 U. S. 577.

[7] *Trustees v. Greenough* 105 U.S. 527 (1882).

Two things decisive in this case have repeatedly been proven by Plaintiff Mohn: 1) According to page 165 of the ***1880 Cherokee Nation Final Roll***, supplemented by the Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511), and the Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727), Plaintiff Mohn is the direct lineal descendant of full-blood "Native Cherokees," unlawfully degraded (in 1901) by DOI administrative officer Thomas B. Needles of the Dawes Commission during the *Kerns-Clifton roll* proceedings and enforced by DOI administrative officer Eddie Streater during Plaintiff Mohn's 2013 - 2014 CDIB denial and appeal proceedings. Consequently, the aggravated felony perjury actions perpetrated by Mr. Needles and enforced "in bad faith" by Mr. Streater unlawfully degraded Plaintiff Mohn's Restricted estate and life trust to Cherokee Freedmen, when his direct lineal ancestors were never Cherokee African slaves to begin with, thereby causing his full-blood Native Cherokee citizenship birth rights and life trust to fall into ruin; 2) Citizenship alone constitutes the right which entitles Plaintiff Mohn to share in his full-blood "Native Cherokee" Federal Indian civil rights; Restricted estate and lifetrust, derived from allotments of 488 acres in the Cherokee Nation territory of the State of Oklahoma.

According to the opinion of the Supreme Court denouncing the authority of the *Kerns Clifton Roll*, which was the same fraudulent roll used by the DOI to degrade Plaintiff Mohn's Restricted estate, * * * **It had been challenged. It had been made up with haste and under circumstances which caused questions of its correctness. It had received no judicial approval. From the first to the last it was the act of administrative officers.  Had it been reported to the court and its integrity**

24

**established by the judgment of the court, Congress might, indeed, have hesitated to ignore it. As an act of merely administrative officers it had no sanction. * * *[8]** In spite of the Supreme Court's rejection of these arbitrary actions of administrative officers, these multiple aggravated felony perjury crimes perpetrated by Mr. Thomas Needles against Plaintiff Mohn's estate have been enforced "in bad faith" for over a century, notwithstanding the rule of law, the decrees of Secretary of Interior Ethan A. Hitchcock (in 1901), and his appeal (in 2013-2014) to administrative officer Mr. Eddie Streater of the Dept. of Interior Bureau of Indian Affairs.

**The 6-year statute of limitations which runs against the United States in relation to annulling land patents is inapplicable when the suit is to protect the rights of Indians,[9] and does not run against members of Indian tribes for claims on Federal income taxes wrongfully deducted by the Indian superintendent from funds due to them.[10] It is also settled that said statutes of limitation or other State**

---

[8] *CHEROKEE NATION and the United States, Appts., v. MOSES WHITMIRE, Trustee for the Freedmen of the Cherokee Nation*. (223 U.S. 108, 32 S. Ct. 200, 56 L.Ed. 370 (1912)).

[9] *Cramer v. United States*, 261 U. S. 219 (1923). See also *United States v . Minnesota*, 270 U. S. 181, 196 (1926).

[10] 34 Op. A. G. 302 (1924).

statutes neither bind nor have any application to the United States when suing to enforce a public right or to protect the interests of its wards.* * *[11]

> *In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: The executive shall never exercise the legislative and judicial powers, or either of them: The judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.*[12]

* * * Statutes governing alienation of restricted Indian lands, or release from restrictions, must be strictly complied with.* * *[13] Professional responsibility is the area of legal practice that encompasses the duties of judges to act in a professional manner, **obey the law**, avoid conflicts of interest, and put the interests of clients ahead of their own interests. Therefore, any of this Court's decisions that betray its judicial duty to the U.S. Constitution (declared on the previous pages and in the original bill of Plaintiff Mohn's complaint) by disregarding and disobeying the constitutional obligations of the United States, is a clear example of Federal Institutional Racism perpetrated

---

[11] *United States v. Thompson*, 98 U. S. 486 (1878); *Ches. & Del. Canal Co. v. United States*, 250 U. S. 123, 125 (1919). *United States v. Minnesota* , 270 U. S. 181, 196 (1926).

[12] Supreme Court Justice Antonin Scalia.

[13] *Boren v. Burge*ss, 97 F. Supp. 1019 (1951); *Drummond v. United States*, 131 F. 2d 568 (1942).

against Plaintiff Mohn, by way of deceit, incompetence, misconduct, and neglect of duty, by the administrative officers of the Dept. of Interior ("DOI") and this Court, the while practicing law, all of which are grounds for removal by the United States Court of Appeals.[14]

**When a judge acts as a trespasser of the law, when a judge does not follow the law, he then loses subject matter jurisdiction and the Judge's order is void, and of no legal force or effect**. Actions that can be classified as judicial misconduct include: 1) conduct prejudicial to the effective and expeditious administration of the business of the courts (**"falsification of facts"**); 2) **violating other specific, mandatory standards of judicial conduct, such as judicial rules of procedure or evidence**; and 3) conduct that might have a prejudicial effect on the administration of the business of the courts among reasonable people.

> *The Court's decision reflects the philosophy that judges should endure whatever interpretive distortions it takes in order to correct a supposed flaw in the statutory machinery. That philosophy ignores the American people's decision to give Congress "[a]ll legislative Powers" enumerated in the Constitution. Art. I, §1. They made Congress, not this Court, responsible for both making laws and mending them. This Court holds only the judicial power—the power to pronounce the law as Congress has enacted it. We lack the prerogative to repair laws that do not work out in practice, just as the*

---

[14] 28 U.S.C. § 176 (a).

*people lack the ability to throw us out of office if they dislike the*

*solutions we concoct. We must always remember, therefore, that*

*"[o]ur task is to apply the text, not to improve upon it."[15]*

Therefore, this Court cannot ignore the separation of powers and the Federal laws approved by Congress that relate to the "guardianship"[16] of the United States over its "wards," or full-blood "Native Cherokee" heirs like Plaintiff Mohn, and their Federal Indian Civil Rights as beneficiaries of their full-blood "Native Cherokee" ancestors' "Restricted" estates in the Cherokee Nation territory of the State of Oklahoma.[17]

---

[15] Supreme Court Justice Antonin Scalia.

[16] * * * **By virtue of its own interest and the interest of the tribe*** *, see *Brewer Elliott Oil & Gas Co. v. United States*, 260 U. S. 77 (1922);* * * **by virtue of its interest in maintaining restrictions and Indians in possession*** *, *Privett v. United States*, 256 U. S. 201 (1921). Also see *Heckman v. United States*, 224 U, S. 413 (1912); *United States v. Title Insurance Co.*, 265 U, S. 472 (1924); *Osage County Motor Co. v. United States*, 33 F. 2d 21 (1929), cert. den. 280 U. S. 577.

[17] **The act of May 27, 1908, together with the 1906 act, and the acts of April 12, 1926, May 10, 1928, May 24, 1928, January 27, 1933, July 2, 1945, August 4, 1947, and act of August 11, 1955, are the principle statutes defining or removing restrictions, and the corresponding tax exemptions, with reference to the property of the Five Civilized Tribes. By the act of May 10, 1928, restrictions on alienation of allotments of allottees of halfblood or more were extended until April 26, 1956. The act of August 11, 1955 (69 Stat. 666) further extended the**

In terms of due diligence, the investigation of the copious amount of Federal records proving the enforcement of the heinous crimes of aggravated felony perjury perpetrated by administrative officers of the DOI against Plaintiff Mohn's estate must be conducted with the same care and legal common sense that a reasonable business or person would exercise before entering into a judgment. Therefore, any decision by this Court that is not in support of Plaintiff Mohn's claim also means that no due diligence was taken by this Court to investigate the undisputed preponderance of statutory evidence identified in the original bill of Plaintiff Mohn's complaint, commanding the District Attorney of the United States and Secretary of the DOI to protect his Federal Indian Civil Rights by: 1) ascertaining his heirship; 2) transferring his Cherokee

---

period of restrictions for the lives of the Indians then owning the restricted lands. Exercise by Congress of its plenary power in Indian affairs to enact curative measures may be illustrated by reference to *United States v. Hellard* (322 U.S. 363(1944)). The Supreme Court had held that the appearance and participation of a United States probate attorney in a State proceeding for the partitioning of restricted land did not make the judgment of the Court binding on the United States. Congress passed a corrective act of July 2, 1945 (59 Stat. 313, 25 U.S.C. 355 note.), which stated that in section 3 that no order, judgment, or decree in partition made subsequent to the effective date of the act of June 14, 1918, and prior to July 2, 1945 (59 Stat. 313, 25 U.S.C. 355 note.), involving inherited restricted lands of members of the Five Civilized Tribes should be void or invalid because the United States was not a party or because it had not been properly served.

citizenship to the "by blood" rolls; and 3) repossessing of his life trust, derived from the Reese family estate of 488 acres of "Restricted" lands in the Cherokee Nation territory of State of Oklahoma. Again, statutes governing alienation of restricted Indian lands, or release from restrictions, must be strictly complied with.

The predominant view of a judge's proper role in statutory interpretation is one of Congress's "legislative supremacy."[18] According to this theory, when a court interprets a federal act, it strives to give effect to Congress's objective. Judges must be faithful agents of Congress, according to this viewpoint. They are not free to disregard or simply replace the policy views of the legislature that created the Act with their own. This belief is rooted in the constitutional separation of powers: in the realm of legislation, the Constitution gives Congress, not courts, the power to make the law. The judicial power vested in the courts entails only "the power to pronounce the law as Congress has enacted it." Accordingly, courts must remain faithful to what the legislature enacted.

The rule of law declares the provisions of the Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511) and the Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727) requiring a roll and Restricted allotments to be made in **strict compliance with the *1880 Authenticated Cherokee Nation Final Roll***," necessarily confirmed the roll, and that the Dawes Commission, in disregarding it when degrading Plaintiff Mohn and his direct lineal full blood "Native Cherokee" ancestors of the Reese family estate trust to Cherokee Freedmen, disobeyed the

---

[18] Legislative supremacy, as a doctrine of statutory interpretation, is grounded in the notion that, except when exercising the power of judicial review, courts are subordinate to legislatures.

commands of these statutes. These statutory commands enacted by Congress are undisputed evidence of the constitutional obligations of the United States to perform their duty of "guardianship"[19] over its "wards," or "full blood" Native Cherokee direct descendants like Plaintiff Mohn, and its constitutional obligation to defend his Federal Indian civil rights. According to the provisions of the *1880 Authenticated Cherokee Nation Final Roll*, the Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511), and the Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727), as the guardian of Plaintiff Mohn's "full blood" citizenship birth rights and the fiduciary of his Restricted estate, derived from 488 acres of lands in the Cherokee Nation territory of the State of Oklahoma, the United States is "compelled to appear and defend its interests in any suit pending in the Federal or State courts of Oklahoma in

---

[19] It is well settled that the United States, by virtue of its peculiar relations with the Indians often called "guardianship " —or as trustee of their property, has the capacity and the duty to effectuate Government policies by protecting and enforcing their rights in property held by it as trustee, or by the Indians themselves in fee simple, subject to restrictions on alienation. **The United States acts on behalf of itself and as trustee or guardian for the Indians. When proceeding on its own behalf the United States is (a) protecting its guardianship over the Indian, and (b) removing unlawful obstacles to the fulfillment of its obligations.** The right of maintaining a suit arises pursuant to provisions in treaties with Indian tribes, or congressional laws, or by virtue of the fact that legal title to land is vested in the United States, subject to the Indian right of occupancy or by reason of the fact that the Indian enjoys a vested right, granted by the Government, to hold land tax exempt for a specified period.

which restricted members of the Five Civilized Tribes are parties." *Oklahoma v. Texas* **(258 U.S. 574 (1922))**. Moreover, these acts compel the District Attorney of the United States * * * **to represent them in all suits at law and in equity. * * * 25 U.S.C. 175, 178.**

Two things decisive in this case have repeatedly been proven by Plaintiff Mohn: 1) According to page 165 of the *1880 Cherokee Nation Final Roll*, supplemented by the Curtis Act of Congress approved June 28, 1898 (30 Stat. 498, 502-511), and the Act of Congress approved July 1, 1902 (chs. 1375, 1376, 32 Stat. 716, 720--727), Plaintiff Mohn is the direct lineal descendant of full-blood "Native Cherokees," unlawfully degraded (in 1901) by DOI administrative officer Thomas B. Needles of the Dawes Commission during the *Kerns-Clifton roll* proceedings and enforced by DOI administrative officer Eddie Streater during Plaintiff Mohn's 2013 - 2014 CDIB denial and appeal proceedings. Consequently, the aggravated felony perjury actions perpetrated by Mr. Needles and enforced "in bad faith" by Mr. Streater unlawfully degraded Plaintiff Mohn's Restricted estate and life trust to Cherokee Freedmen, when his direct lineal ancestors were never Cherokee African slaves to begin with, thereby causing his full-blood Native Cherokee citizenship birth rights and life trust to fall into ruin; 2) Citizenship alone constitutes the right which entitles Plaintiff Mohn to share in his Federal Indian civil rights and Restricted allotments of 488 acres in the Cherokee Nation territory of the State of Oklahoma.

According to the opinion of the Supreme Court denouncing the authority of the *Kerns Clifton Roll*, which was the same fraudulent roll used by the DOI to degrade Plaintiff Mohn's Restricted estate, * * * **It had been challenged. It had been made up**

with haste and under circumstances which caused questions of its correctness. It had received no judicial approval. From the first to the last it was the act of administrative officers.  Had it been reported to the court and its integrity established by the judgment of the court, Congress might, indeed, have hesitated to ignore it. As an act of merely administrative officers it had no sanction. * * *[20]

> Where the law provides for the enrollment of "Indians of the blood" of certain tribes or bands, the Secretary is not required to make a special determination of how the ancestors of an applicant for enrollment became members of the particular tribe or band. Such a roll, it is said, should include any bona fide member whose ancestors would have been accepted by the tribe as members. Where the legislative history of the law shows that to be the intent of Congress.[21]

---

[20] *CHEROKEE NATION and the United States, Appts., v. MOSES WHITMIRE, Trustee for the Freedmen of the Cherokee Nation.* (223 U.S. 108, 32 S. Ct. 200, 56 L.Ed. 370 (1912)).

[21] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey. Originally published: U.S. Govt. Printing Office. 1958. "United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor." Pg. 416.

With respect to the guardianship aspect of the problem, the Supreme Court has stated:[22] **\* \* \* Since the power of Congress over Indian affairs is plenary, it may waive or withdraw these duties of guardianship or entrust them to such agency state or federal — as it chooses.\* \* \***

In the case of *Cherokee Nation v. Hitchcock, 187 U.S. 294 (1902)*,[23] the Supreme Court said: **\* \* \* The power existing in Congress to administer upon and guard the tribal property, and the power being political and administrative in its nature, <u>the manner of its exercise is a question within the province of the legislative branch to determine, and is not one for the courts</u> (p. 308).\* \* \***

The Supreme Court, per Mr. Justice Van Devanter,[24] said: **\* \* \* Our decisions, while recognizing that the government has power to control and manage the property and affairs of its Indian wards in good faith for their welfare, <u>show that this power is subject to constitutional limitations and does not enable the</u>**

---

[22] *United States v. Hellard* , 322 U. S. 363, 367 (1944).

[23] The Court concluded : **\* \* \* The holding that Congress had power to provide a method for determining membership in the five civilized tribes, and for ascertaining the citizenship thereof preliminary to a division of the property of the tribe among its members, necessarily involved the further holding that Congress was vested with authority to adopt measures to make the tribal property productive, and secure therefrom an income for the benefit of the tribe (p. 307).**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

[24] *Chippewa Indians v. United States*, 301 U. S. 358, 375–376 (1937), aff's 80 Ct. Cl. 410 (1935). Also see *Creek Nation v. United States*, 302 U. S. 620 (1938)

34

government to give the lands of one tribe or band to another, or to deal with them as its own.* * *

       **Tribal Funds. —** The power of Congress over tribal funds is the same as its power over tribal lands, and is, historically speaking, a result of the latter power, since tribal funds arise principally from the use and disposition of tribal lands.[25]

       **Individual Lands.—**The power of Congress over individual lands, while less sweeping than its power over tribal lands, is clearly broad enough to cover supervision of the alienation of individual lands. Congress has not exerted authority over individual lands not in a trust or restricted category except insofar as to reimpose restrictions and restore them to the class of lands under its supervision.[26]

---

[25] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey. Originally published: U.S. Govt. Printing Office. 1958. "United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor." Page 39.

[26] Ibid. Page 40.

As "an incident to guardianship"[27] Congress not only has the power to extend,[28] modify,[29] or remove existing restrictions on the alienation of such lands[30] but while the Indian is still the ward of the Nation it may reimpose restrictions on property already freed from restrictions or delegate such power to an executive officer. <u>Statutes governing alienation of restricted Indian lands, or release from restrictions, must be strictly complied with.</u>[31]

---

[27] *La Motte v. United States*, 254 U. S. 570, 575 (1921).

[28] *Tiger v. Western Inv. Co.*, 221 U. S. 286 (1911); *Heckman v. United States*, 224 U. S. 413 (1912); *United States v. Gilbertson*, 111 F. 2d 978 (1940). Also see United States v. Jackson, 280 U. S. 183, 191 (1930), involving extension of trust period of homestead patent under act of July 4, 1884, 23 Stat. 76, 96, on the ground that the Indians possessed no vested right until a fee patent was issued; and *United States v. Pelican*, 232 U. S. 442, 451 (1914), involving congressional retention of trusteeship of land thrown open to settlement.

[29] *Chippewa Indians of Minnesota v. United States*, 90 Ct. Cl. 140 (1940); 25 U. s. C. 483. See Op. Sol. M. 36003, June 7, 1950, and *Lac du Flambeau Tribe v. McKay*, 221 F: 20 886 (1955).

[30] *Goat v. United States*, 224 U. S. 458 (1912); *Deming Inv. Co. v. United States*, 224 U. S. 471 (1912); *Jones v. Prairie Oil Co.*, 273 U. S. 195 (1927).

[31] *Boren v. Burge*ss, 97 F. Supp. 1019 (1951); *Drummond v. United States*, 131 F. 2d 568 (1942).

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

**Within the fabric of rights and remedies there is a certain scope of administrative discretion which has been described in a ruling of the Solicitor for the Interior Department in these terms:[32]**

**The Secretary may for good reason refuse to approve an allotment selection, but he may not cancel his approval of an allotment <u>except to correct error or to relieve fraud</u>. Cf. *Corneleus v. Kessel* (128 U.S. 456) (public land entry).[33]**

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

**(2) Where the Secretary has approved an allotment, the ministerial duty arises to issue a patent. With approval his discretion is ended except, of course, for such reconsideration of his approval as he may find necessary (24 L.D. 264). Since only the routine matter of issuing a patent remains, <u>the allottee after his allotment is approved is considered as having a vested right to the allotment as against the Government</u>. Raymond Bear Hill (42 L.D. 689 (1929). (Cf. <u>Where a</u>**

---

[32] Op. Sol. M. 28086, July 17, 1935. And see Memo. Sol, I.D., September 17, 1934. Cf. *Arenas* case, supra.

[33] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey. Originally published: U.S. Govt. Printing Office. 1958. "United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor." Pgs. 68, 69.

certificate of approval has issued as in the Five Civilized Tribes cases, *Ballinger v. Frost* (216 U.S. 240); and where right to a homestead is involved, *Stark v. Starre* (6 Wall. 402).) And then the allottee may bring mandamus to obtain the patent. See *Vachon v. Nichols-Chisolm Lumber Co.* (126 Minn. 303, 148 N.W. 288, 290 (1914).) Cf. *Lane v. Hoglund* (244 U.S. 174); *Butterworth v. United States* (112 U.S. 50); *Barney v. Dolph* (97 U.S. 652, 656).[34]

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

An Indian may invoke the aid of the courts and applicable law[35] to determine his entitlement to an allotment, and the Secretary must answer for his refusal or failure to act.[36] A court having jurisdiction may direct the Secretary to perform the required ministerial duty and issue the certificate of allotment.[37] Where rights to allotments have been equitably vested, by right of pending application under an earlier law, the lands may not be disposed of in a manner which will defeat the rights of Indian allottees.[38] Whether an allotment is made by the Secretary or by a judgment of a court, the Indian has an

---

[34] Ibid. pg. 69.

[35] 25 U.S.C. 345.

[36] Ibid., and see *Arenas v. United States,* 322 U.S. 419 (1944).

[37] *United States v. Arenas*, 158 F. 2d 730 (1947), cert. Den. 331 U.S. 842; *Segundo et al. v. United States*, 123 F. Supp. 554 (1954).

[38] 57 I.D. 547. See also 57 I.D. 16, 18--19.

equitable estate in the land, with a right of occupancy and the use of produce but without a right to alienate or encumber the allotment.[3940] Once the roll is closed, however, and allotments are made, rights become vested and are protected by the Constitution. Even so, Congress retains some power[41] to correct errors of omission and

---

[39] *Arenas v. Preston*, 181 F. 2d 62 (1950), cert. den. 340 U.S. 819.

[40] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey. Originally published: U.S. Govt. Printing Office. 1958. "United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor." Pg. 72.

[41] Section 4 of the Act of April 26, 1906 (340 Stat. 137, chap. 1876) * * * **SEC. 4. That no name shall be transferred from the approved freedmen, or any other approved rolls of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole tribes, respectively, to the roll of citizens by blood, unless the records in charge of the Commissioner to the Five Civilized Tribes show that application for enrollment as a citizen by blood was made within the time prescribed by law by or for the party seeking the transfer, and said records shall be conclusive evidence as to the fact of such application, unless it be shown by documentary evidence that the Commission to the Five Civilized Tribes actually received such application within the time prescribed by law.* * ***

<u>add the names of eligible persons after a roll becomes final</u> without creating a legal claim in favor of the tribe.[42]

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

Nevertheless as suggested above, in order for the United States to maintain a suit so that the court may pass upon the merits of the case and enter a valid judgment therein, it must be a suit which the United States is authorized to maintain.[43] <u>In cases where the United States is seeking to enforce a measure of government enacted in the exercise of its constitutional powers, there is or can be no question as to the authority of the United States to apply to its own courts for relief.</u>[44] In cases where the United States sues for the benefit of a third party, <u>it may be stated that as a general rule it must have an interest in the subject matter or purpose of the suit and the relief sought</u>. This interest does not necessarily have to be a pecuniary one; <u>it is sufficient if it is a governmental one</u>.[45] A pecuniary interest

---

[42] *United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor.* The LawBook Exchange Ltd. 2008. New Jersey. Originally published: U.S. Govt. Printing Office. 1958. "United States Department of Interior Office Fred A. Seaton Secretary. Office of the Solicitor. Elmer F. Bennett, Solicitor." Pg. 44.

[43] See cases 28 U.S.C.A. 1345.

[44] See *Heckman v. United States*, 224 U. S. 413 (1912), and cases cited therein.

[45] On the general question of the right of the United States to institute suit for the benefit

of the United States itself need not exist <u>in cases involving restricted Indian lands</u>[46] or land in which the United States is trustee. <u>It is well settled that the United States, by virtue of its peculiar relations with the Indians often called " guardianship "</u> —or as trustee of their property, has the capacity <u>and the duty to effectuate Government policies by protecting and enforcing their rights in property</u> held by it as trustee, <u>or by the Indians themselves in fee simple, subject to restrictions on alienation.</u>[47] The United States acts in behalf of itself and as trustee <u>or guardian for the Indians.</u>[48] <u>When proceeding on its</u>

---

of a third party, see *United States v. San Jacinto Tin Co.*, 125 U. S. 273, 286 (1888) ; Curtner v. United States, 149 U. S. 662, 671-673 (1893). On the general subject of the right of the Government to sue, see In re Debs, 158 U. S. 564, 584 (1895).

[46] *Heckman v. United States*, 224 U. S. 413 ( 1912 ); also see 25 Harv. L. Rev. 733, 740 (1912).

[47] *Goat v. United States*, 224 U. S. 458 (1912); *Deming Investment Co. v. United States*, 224 U. S. 471 (1912); *Heckman v. United States*, 224 U. S. 413 (1912). **\* \* \*The United States represents its own interest in enforcing laws for the protection of Indians for whose benefit the suit was brought\* \* \***. *Heckman v. United States*, 224 U. S. 413, 4444-446(1912). Also see United *States v. Minnesota*, 270 U. S. 181 (1926).

[48] **\* \* \* By virtue of its own interest and the interest of the tribe\* \* \*** , see *Brewer Elliott Oil & Gas Co. v. United States*, 260 U. S. 77 (1922); **\* \* \* by virtue of its interest in maintaining restrictions and Indians in possession,\* \* \*** *Privett v. United States*, 256 U. S. 201 (1921). Also see *Heckman v. United States*, 224 U, S. 413 (1912); *United*

own behalf the United States is (a) protecting its guardianship over the Indian, and (b) removing unlawful obstacles to the fulfillment of its obligations.[49] The right of maintaining a suit arises pursuant to provisions in treaties with Indian tribes, or congressional laws, or by virtue of the fact that legal title to land is vested in the United States, subject to the Indian right of occupancy or by reason of the fact that the Indian enjoys a vested right, granted by the Government, to hold

---

*States v. Title Insurance Co.*, 265 U, S. 472 (1924); *Osage County Motor Co. v. United States*, 33 F. 2d 21 (1929), cert. den. 280 U. S. 577.

[49] The Supreme Court of the United States, in *United States v. Minnesota*, 270 U. S. 181, 194 (1926), said : * * * The United States has a real and direct interest in the matter presented for examination and adjudication. Its interest arises out of its guardianship over the Indians and out of its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations; and in both aspects the interest is one which is vested in it as a sovereign * * *. *Heckman v. United States*, 224 U. S. 413, 437-444; *United States v. Osage County*, 251 U. S. 128, 132–133; *LaMotte v. United States*, 254 U. S. 570, 575; *Cramer v. United States*, 261 U. S. 219, 232;

*United States v. Beebe*, 127 U. S. 338, 342–343; *United States v. New Orleans Pacific Ry. Co.*, 248 U, S. 507, 518. And see *United States v. Nashville, Chattanooga d St. Louis Ry. Co.*, 118 U. S. 120, 126 (1886).

land tax exempt for a specified period.[50] Usually the property involved is restricted land held by an Indian under a trust or other patent from the United States, or purchased for an Indian out of funds derived from the sale of allotted lands and restricted by the Secretary of the Interior;[51] Sometimes the case involves personal property furnished by the Government to the Indian, to be used by him in connection with an allotment, without the right of disposal except to other Indians, or held in trust by the United States for him, or affected by such trusts. It has often been held that the United States lacks the capacity to sue regarding lands held by Indians which have been freed from restrictions, because it is under no duty to the Indians and has no interest in the matter. However, the Government has a duty and an interest to protect the right of the Indian to hold his land free from taxation for the trust period of 25 years, and the relationship between the United States and the Indian with respect to this vested right is regarded as the legal relationship

[50] The circuit court of appeals in the case of *United States v. Colvard*, 89 F. 2d 312 (1937), said :* * * even if the title were not in the United States, there can be no question as to the right of the United States to institute suit for the protection of the rights of these wards of the nation in and to their property* * * (p. 314). But cf. *Hy- yu- tse- mil-kin v. Smith*, 194 U. S. 401 (1904).

[51] *United States v. Brown* , 8 F. 2d 564 (1925), cert. den. 270 U. S. 644 (1926); but cf. *McCurdy v. United States*, 246 U. S. 263 (1918).

<u>of trusteeship which gives the United States the capacity to sue on behalf of the Indians,</u> **to recover illegal taxes or restrain collection of taxes levied on land freed from restrictions.[52] The remedy of a patentee of allotted Indian land for an allegedly erroneous decision of a State court quieting title in the mortgagee who foreclosed in the absence of intervention by the United States is by certiorari to the Supreme Court not by collateral attack in a subsequent action**

---

[52] *Morrow v. United States*, 243 Fed. 854 (1917); *McCurdy v. United States*, 264 U. S. 484 (1924). Also see *Board of County Commissioners of Tulsa County, Oklahoma v. United States*, 94 F. 2d 450 (1938); and *United States v. Moore,* 284 Fed. 86 (1922), * * * **in which the United States brought suit to recover royalties paid under an assignment illegally made during the period of restrictions, after the period had expired** * * *. The court said, in *United States v. Southern Surety Co.*, 9 F. 2d 664 (1925):

* * * **removal of restrictions against the alienation of allotted land does not preclude the United States from maintaining an action to remove a cloud illegally placed on such title during the restricted period.** * * * This action is properly brought in the name of the United States (p. 665). *United States v. Gray*, 201 Fed. 291 (1912); and *United States v. Sherburne Mercantile Co.*, 68 F. 2d 155 (1933).

* * * **The Federal Government may sue to recover taxes illegally levied upon personal property such as livestock and farm implements which it issued to members or to a tribe**, * * * *United States v. Dewey County*, s. D., 14 F. 2d 784 (1926).

brought by the allottee to quiet title.[53] The United States may sue to enjoin the imposition of local or State taxes on allotted lands or permanent improvements thereon, or personal property obtained from the United States and used by the Indians on the allotted lands.[54]

Where restrictions on land are transgressed, the Government can choose such legal remedies as are necessary to protect the Indian . It may maintain an action to quiet the title to land;[55] set aside convey ances made prior to the expiration of the trust period, restore possession to the Indian even though the allottee is a citizen,[56] <u>or</u>

---

[53] *Bonds v. Sherburne Mercantile Co.*, 169 F. 2d 433 (1948), cert, den. 335 U. S. 899.

[54] *United States v. Rickert. Railway Co. v. AfcShane*, 22 Wall, 444 ; *Coosaw Mining Co. v. South Carolina*, 144 U. S. 550, 564–66.

[55]\* \* \* Title to distributed land claimed by, or thought to be the property of, an Indian, may be determined by suit brought by the United States to quiet Indian title,\* \* \* *United States v. Wildcat*, 244 U. S. 111 (1917 ) ; *United States v. Atkins*, 260 U. S. 220 (1922 ); *United States v. Title Insurance Co.*, 265 U. S. 472 (1924 ) ; *United States v. Jackson*, 280 U, S. 183 (1930).

[56] *Bowling v. United States*, 233 U. S. 528 (1914) ; and *Tiger v. Western Investment Co.*, 221 U. S. 286 (1911). Knoepfler, Legal Status of the American Indian and His Property (1922), 7 Ia. L. B., pp. 232 , 246. The act of June 25, 1910, 36 Stat. 703, 744, and the act of July 1 , 1916, 39 Stat. 262, 312, and subsequent appropriation acts provided for the expenses of such suits.

where title has been vested in the allottee but the right of alienation
is restricted.[57] The Government may bring suit to cancel deeds and
mortgages;[58] to set aside conveyances;[59] to annul a patent issued by
the United States in order to establish possessory rights of
individual Indians;[60] to set aside inequitable contracts;[61] to sue for a
cancellation of a mining lease and assignment of rents and royalties
issuing therefrom;[62] to cancel oil and gas leases.[63] The Government
may sue a lessee and a surety company which signed a faithful
performance bond, for a breach of a lease, involving trust lands,
made by an allottee and approved by the Secretary.[64] The United
States may sue to enjoin trespassing on tribal lands and on
restricted allotments.[65] It may enjoin the assertion of rights under

---

[57] * * *All conveyances of such land made prior to the expiration of the restriction
on alienation are void.* * * *United States v. Noble*, 237 U. S. 74 (1915).

[58] *Deming Investment Co. v. United States*, 224 U. S. 471 (1912).

[59] *United States v. First National Bank* , 234 U. S. 245 (1914).

[60] *Cramer v. United States*, 261 U. S. 219, 232–233 (1923).

[61] *United States v. Boyd*, 68 Fed. 577 (1895).

[62] *United States v. Noble*, 237 U. S. 74 (1915).

[63] *Brewer Elliott Oil and Gas Co. v. United States*, 260 U. S. 77 (1922).

[64] *United States v. Gray*, 201 Fed. 291 (1912).

[65] *Ash Sheep Co. v . United States*, 252 U. S. 159 (1920). Also see Taylor v. United
States 44 F. (20) 531 (1930).

leases of restricted allotments or of land held by the United States in trust for a tribe obtained from an Indian without conforming to the statutory and administrative requirements, and may enjoin the negotiation of such unlawful leases in the future.[66] Even where unrestricted Indians are involved, the Federal court has jurisdiction over cases based on statutory tax exemptions.[67] The right of the United States to bring suits in behalf of Indians involving their lands after the period of trust or restrictions has expired, and to which the United States has no title, is upheld in many cases, among them *United States v. Moore*,[68] in which the United States brought suit to recover royalties paid under an assignment illegally made during the period of restrictions; the suit being brought after the period had expired.

The 6-year statute of limitations which runs against the United States in relation to annulling land patents is inapplicable when the

---

[66] *United States v. Flournoy Live- Stock and Real-Estate Co*., 71 Fed. 576 (1896). Also see *Brewer Elliott Oil and Gas. Co. v. United States*, 260 U. S. 77 (1922).

[67] In *United States v. Morrow*, 243 Fed. 854 (1917), **suit was brought by the United States not as guardian but as trustee of lands for a mixed-blood Indian against Becker** Footnote continued on p. 333.

[68] 284 Fed. 86 (1922).

suit is to protect the rights of Indians,[69] and does not run against members of Indian tribes for claims on Federal income taxes wrong fully deducted by the Indian superintendent from funds due to them.[70]

It is also settled that said statutes of limitation or other State statutes neither bind nor have any application to the United States when suing to enforce a public right or to protect the interests of its wards.[71] Congress may consent, however, to the application of a State statute of limitations to suits for partition of lands.[72] Some statutes instruct the Attorney General to bring suit in the name of the United States to quiet title to Indian land; or authorize the Attorney General, upon the request of the Secretary of the Interior, to appear in suits involving Indian tribal lands,[73] without

---

[69] *Cramer v. United States*, 261 U. S. 219 (1923). See also *United States v . Minnesota*, 270 U. S. 181, 196 (1926).

[70] 34 Op. A. G. 302 (1924).

[71] *United States v. Thompson*, 98 U. S. 486 (1878); *Ches. & Del. Canal Co. v. United States*, 250 U. S. 123, 125 (1919). *United States v. Minnesota* , 270 U. S. 181, 196 (1926).

[72] *Wolfe et al. v . Phillips* et al., 172 F. 2d 481 (1949) , cert. den . 336 U. S. 968, applying sec. 2 of the act of April 12, 1926, 44 Stat. 239.

[73] Act of March 2, 1901, 31 Stat. 950, 43 U.S.C. 868. The Attorney General is sometimes authorized to employ a special attorney, upon the recommendation of the

requiring Indians to be made parties; or, <u>authorize the Secretary to</u>

<u>instruct the Attorney General to bring suit in the name of the United</u>

<u>States to quiet and settle title to</u> distributed tribal[74] or <u>allotted lands</u>.[75]

(2) United States as defendant. — The general rule is that the United

States cannot be sued in any court, whether State or Federal, without

its consent. <u>Such consent has been granted with respect to</u>

<u>tort claims which accrued on or after January 1, 1945,</u>[76] <u>and this</u>

<u>remedy is available to individual Indians</u>.[77] However, that consent

also may be implied, as for example, where a court has been granted

---

Secretary. Act of March 3, 1901, 31 Stat. 1133, 1181; act of April 28, 1904, 33 Stat. 452,

506.

[74] Joint resolution of March 3, 1879, 20 Stat. 488 (Shawnee); act of March 1, 1889, 25

Stat. 768 (Shawnee).

[75] Act of March 3, 1915, 38 Stat. 822 , 866.

[76] 28 U. S. C. 1346 (b), 2401 (b) and 2671 et seq. Whether this act reaches

property of Indian tribes remains to be decided.

[77] *Hatahley et al. v. United States*, 351 U. S. 173 , 181 (1956) . Cf. Op. Sol . M. 34583,

January 8, 1947. See also Op. Sol . M. 36110, December 4 , 1951.

jurisdiction to partition Indian land.[78] If the required consent is given, the objection being removed, the Court may settle the controversy involved.[79]

The cases in which the United States has expressly given its consent to be sued in Indian matters either in the Court of Claims or in the district courts are numerous.[80]

(3 ) United States as intervener. - In view of the established doctrine that the United States cannot be sued without its consent, the

---

[78] *United States v . Hellard* , 322 U. S. 363, 368–369 (1944).

[79] *National Casket Co. v. United States*, 263 Fed. 246 (1920); *Keokuk & Hamilton Bridge Co.. v. United States*, 260 U. S. 125 (1922).

[80] See act of December 21, 1911, 37 Stat. 46, amendatory of act of August 15, 1894, 28 Stat. 286, 305 , as amended by act of February 6, 1901, 31 Stat. 760, and act of March 3, 1911, 36 Stat. 1094, 25 U. S. C. 345, conferring jurisdiction upon the district courts of the United States of —

* * * all actions, suits, or proceedings involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty. and authorizing and directing that the United States be made a party to such suit.* * * This act followed the decisions of the Supreme Court in the cases of *Hy-yu -tse-mil-kin v . Smith*, 194 U. S. 401 (1904), and *McKay v. Kalyton*, 204 U. S. 458 (1907), in which the Supreme Court had held that the United States was not a necessary party to such suit for allotment. See also 28 U. S. C. 1353 granting original jurisdiction to the Federal distiict courts to hear these allotment suits.

question arises whether <u>the United States can become a party to a pending suit by intervention</u>, and, if so, under what circumstances. <u>It appears that where an intervention places the Government in the position of a plaintiff</u>, as in *New York v. New Jersey*[81] and *Oklahoma v. Texas*,[82] <u>the Government may properly become an intervener</u>. <u>The consent of the United States cannot be given by any officer of the United States unless authority to do so has been conferred upon him by some act of Congress.</u>[83] <u>Instances in which the United States has given such consent are to be found in the act of February 6 , 1901,</u>[84] <u>permitting suits for allotment in the district courts of the United States, providing for service of process upon the Attorney General and requiring the district attorney, upon whom service is also to be made, to appear and defend the interests of the United States in the suit</u>; <u>and in the act of April 12, 1926,</u>[85] <u>providing a process whereby the United States may be compelled to appear and defend its interests in any suit pending in the Federal or State courts of</u>

---

[81] 256 U. S. 296 (1921).

[82] 258 U. S. 574 (1922).

[83] *Stanley v. Schwalby,* 162 U. S. 255 (1896).

[84] 31 Stat. 760, 25 U. S. C. 345, and 28 U. S. C. 1353.

[85] 44 Stat. 239. **See *United States v . Hellard*, 322 U. S. 363 (1944), See pgs. 7-9, plaintiff's original complaint.**

Oklahoma in which restricted members of the Five Civilized Tribes are parties. The practice adopted under this statute is for the United States attorney to appear for and in behalf of the United States, within the statutory period, upon service of the notice upon the superintendent as provided by the statute.

(5) Individual Indian as party litigant.-- This being true, the only grounds upon which a Federal court could take jurisdiction of a suit by an Indian would be either because of diversity of citizenship between the plaintiff and defendant or because the cause of action arose under the Constitution, treaties, or laws of the United States. Res judicata is no bar, of course, where Congress has provided new statutory grounds for recovery.[86] [87]

---

[86] *Chickasaw Nation v. United States*, 132 F. Supp . 199 (1955).

[87] 2008 United States Department of Interior, Fred A. Seaton, Secretary, Office of the Solicitor, Elmer F. Bennett, Solicitor."Clark, New Jersey. The Lawbook Exchange Ltd. Originally published: Washington, D.C. Govt. Print. Off., 1958. "United States Department of Interior, Fred A. Seaton, Secretary, Office of the Solicitor, Elmer F. Bennett, Solicitor." Pgs. 327-354.

**BACKGROUND**



**PAGE 165 OF THE 1880 AUTHENTICATED CHEROKEE NATION FINAL ROLL.**

Plaintiff Mohn is both a citizen of the United States and a registered citizen of the federally recognized Cherokee Nation of Oklahoma. He is a legal resident of the State of Oklahoma. According to page 165 of the records in charge of the ***1880 Authenticated Cherokee Nation Final Roll***, Plaintiff Mohn is the direct lineal descendant of full-blood Native Cherokees: 1) Jesse Reese (#2437); 2) Betsy Reese (#2438); and 3) James Reese (#2440). This important base roll of the Cherokee Nation of Oklahoma was created by the Act of the Cherokee National Council approved December 9, 1880 (Senate Bill 58). More importantly, it was confirmed by the U.S. Congress to be a fair and just roll of citizens that was "carefully and correctly made." As a result, it was the only tribal roll specifically confirmed by Congress in Section 21 of the Curtis Act approved June 28, 1898 (30 Stat. 498, 502-511) for the basis for enrollment. This federally recognized base roll of the Cherokee Nation of Oklahoma is stored at the United States National Archives and is filed under the microfilm number 7RA06.

## CAUSATION: THE 1901 MULTIPLE AGGRAVATED PERJURY CRIMES OF ADMINISTRATIVE OFFICER THOMAS B. NEEDLES

First, Thomas B. Needles intentionally committed aggravated felony perjury by falsely stating under oath that Betsy Reese's name was Betsy Buffington, in 1880. Then, on the very next lines of his official testimony, Needles contradicted his perjured testimony by stating that the name of Betsy Reese was identified on the 1880 Authenticated Cherokee Nation Final Roll as a full-blood "Native Cherokee." Despite confirming Betsy Reese's full-blood Native Cherokee citizenship on the 1880 "last authenticated roll of the Cherokee Nation of Oklahoma," Needles degraded her full-blood Native Cherokee citizenship to "Cherokee Freedmen" on the racist Jim Crow era,

federally perjured, 1898—1914 Commission of the Five Civilized Tribes Roll. See Exhibit B.

Again, Thomas Needles intentionally committed aggravated felony perjury by falsely stating under oath that Jesse Reese was a slave of a fake slave owner conveniently named Jesse Reese. According to federal and tribal records, prior to 1900, no other person by the name of Jesse Reese ever existed in the Cherokee Nation, Indian Territory. Again, on the very next lines of his official testimony, Needles contradicted his perjured testimony by stating that the name of Jesse Reese was identified on the 1880 Authenticated Cherokee Nation Final Roll as a full-blood "Native Cherokee." Despite confirming Jesse Reese's full-blood Native Cherokee citizenship on the 1880 "last authenticated roll" of the Cherokee Nation of Oklahoma, Needles unlawfully degraded his full-blood Native Cherokee citizenship to "Cherokee Freedmen" on the racist Jim Crow era, federally perjured, 1898—1914 Commission of the Five Civilized Tribes Roll.

The records in charge of the Commission of the Five Civilized Tribes clearly show that the application for enrollment of Jesse Reese, Betsy Reese, and James Reese as a citizen "by blood" was made in 1901, within the time prescribed by law. According to the DOI 1898—1914 Commission of the Five Civilized Tribes Roll, administrative officer Thomas Needles verified that the entire Reese family was identified on the 1880 Authenticated Cherokee Nation Final Roll as full-blood "Native Cherokees." Therefore, according to Section 21 of the Curtis Act approved June 28, 1898 (30 Stat. 498, 502), Section 27 of the Act of July 1, 1902 (c. 1375, 32 Stat. 716,

720), and Section 4 of the Act of April 26, 1906 (34 Stat. 137, c. 1876),[88] these records

are conclusive as to the fact of such application to transfer Plaintiff Mohn to the "by

blood" rolls according to Federal law. See Exhibit B.

---

[88] Section 4 of the Act of April 26, 1906 (34 Stat. 137, chap. 1876) * * * **SEC. 4. That no**
**name shall be transferred from the approved freedmen, or any other approved**
**rolls of the Choctaw, Chickasaw, <u>Cherokee</u>, Creek, or Seminole tribes,**
**respectively, to the roll of citizens by blood, <u>unless the records in charge of the</u>**
**<u>Commissioner to the Five Civilized Tribes show that application for enrollment as</u>**
**<u>a citizen by blood was made within the time prescribed by law by or for the party</u>**
**<u>seeking the transfer, and said records shall be conclusive evidence as to the fact</u>**
**<u>of such application,</u> unless it be shown by documentary evidence that the**
**Commission to the Five Civilized Tribes actually received such application within**
**the time prescribed by law.* * ***